**FILED**

**May 12, 2022**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **A.G., C.G., T.S., D.G., and R.C.**

**No. 21-0889** (Monongalia County 21-JA-33, 21-JA-34, 21-JA-35, 21-JA-36, and 21-JA-37)

**MEMORANDUM DECISION**

Petitioner Mother K.S., by counsel Amanda J. Ray, appeals the Circuit Court of Monongalia County's September 30, 2021, order terminating her parental rights to T.S., D.G., and R.C. and imposing an alternative disposition with regard to A.G. and C.G.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Katica Ribel, filed a response in support of the circuit court's order. The guardian ad litem, Teresa J. Lyons, filed a response on behalf of the children also in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in (1) denying her a post-adjudicatory improvement period, (2) denying her motion to continue the dispositional hearing, (3) finding that the DHHR made reasonable efforts when no services were offered, (4) finding that petitioner demonstrated an inadequate capacity to solve the problems of abuse and neglect, and (5) terminating her parental rights without holding an evidentiary hearing.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds that the circuit court erred in imposing disposition without requiring the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, the circuit court imposed disposition pursuant to West Virginia Code § 49-4-604(c)(5) with regard to A.G. and C.G. The statute provides that

> [u]pon a finding that the abusing parent or battered parent or parents are presently unwilling or unable to provide adequately for the child's needs, commit the child temporarily to the care, custody, and control of the department, a licensed private child welfare agency, or a suitable person who may be appointed guardian by the court.

1

DHHR to present any evidence at the dispositional hearing. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure and is therefore appropriate for a memorandum decision vacating the circuit court's order rather than an opinion.

On April 1, 2021, the DHHR filed a child abuse and neglect petition against petitioner, alleging that she failed to protect the children from physical and sexual abuse perpetrated by her live-in boyfriend, J.C.[2] Specifically, the DHHR alleged that child A.G., then fourteen years old, reported that J.C. performed oral sex on her on two occasions. A.G. reported that she told petitioner of the abuse and that petitioner told her not to tell anyone. The DHHR further alleged that T.S. and D.G. inappropriately touched A.G., and that A.G. suffered from anxiety, depression, and suicidal ideations. The DHHR also alleged that the children exhibited aggressive behavior towards each other and suffered from mental health issues and that petitioner failed to maintain their medical appointments and medication.

A Child Protective Services ("CPS") worker investigated the allegations and spoke to A.G.'s therapist, who reported that A.G. disclosed sexual abuse by J.C. According to the therapist, A.G. told petitioner of the abuse and petitioner and J.C. claimed that J.C. was sleepwalking during the incidents. The CPS worker arranged for the children to undergo forensic interviews, and all of the children reported being touched inappropriately by D.G. A.G. also disclosed physical abuse perpetrated by J.C. against the children, including whipping them hard enough to leave red marks and dragging R.C. down the stairs by her arm. Following the interviews, the CPS worker spoke to petitioner, who acknowledged that she had seen D.G. inappropriately touch the other children and expressed concerns with J.C.'s discipline of the children. Petitioner further acknowledged that A.G. reported sexual abuse by J.C. to her and that she confronted J.C. about the allegations, but he explained that he "did n[ot] remember doing it."

The circuit court held a preliminary hearing later in April of 2021. The DHHR presented the testimony of a CPS worker, who testified that the DHHR had recently received a total of five referrals regarding the family and recounted the allegations of physical and sexual abuse, as well as her investigation into the same. The worker testified that petitioner acknowledged that J.C. was "rough" with the children, that A.G. had disclosed sexual abuse by J.C., that she accepted J.C.'s sleepwalking explanation, and that she continued to live with J.C. until the children were removed from her care. Following the children's removal, J.C. admitted himself to Highland Hospital, and petitioner obtained a domestic violence protective order ("DVPO") against him. The worker further indicated that petitioner had not sought medical attention for A.G. The worker also testified that petitioner had been the subject of prior abuse and neglect proceedings from 2015 to 2018 and that a CPS case was opened against her and services were provided for nine months in 2020. The court found that there existed probable cause to believe that the children were at risk of imminent danger in the custody of petitioner and J.C. and that there were no reasonable available alternatives to the removal of the children from their care.

Petitioner submitted to a parental fitness evaluation in June of 2021. The evaluator gave petitioner a poor diagnosis for attaining minimally adequate parenting in the near future, especially given her participation in prior services. The evaluator opined that petitioner's "profile suggests

---

[2]J.C. is the biological father of child R.C. only.

2

difficulty with dependency and avoidant behavior." Further, the evaluator noted that petitioner has "pronounced problems with differentiation between appropriate and inappropriate parenting." The evaluator stated that petitioner had been in abusive relationships and was aware of A.G.'s sexual abuse but did nothing to address that situation and told the child to remain silent. Lastly, the evaluator noted that the records suggested an ongoing pattern of verbal and physical abuse in the home that negatively impacted the children over the course of several years. The evaluator concluded that petitioner did not have the parental capacity to care, protect, and change in order to adequately provide for the children.

In July of 2021, the court held an adjudicatory hearing. Petitioner stipulated to the allegations contained in the petition—that she failed to protect her children from physical and sexual abuse and that she failed to seek medical care for A.G. The court accepted petitioner's stipulation and adjudicated her as an abusing parent.

The court held an initial dispositional hearing in August of 2021. Petitioner moved the court to grant her a post-adjudicatory improvement period. Petitioner's counsel proffered that petitioner understood that she should have done more to protect the children after A.G. disclosed sexual abuse by J.C. Counsel further noted that petitioner had previously successfully completed an improvement period and regained custody of the children in 2018 and that she had successfully participated in services in 2020. The DHHR objected, arguing that petitioner had previously been granted services from 2015 to 2018 and again for nine months in 2020 but that she failed to adequately address her parenting deficits. During the conversation, it was discovered that the DHHR had not timely filed case plans and, as such, the hearing was continued.

The court held a final dispositional hearing in September of 2021. At the hearing, the DHHR stated that it was going to present the testimony of the evaluating psychologist when petitioner's counsel interrupted and requested a ruling on her motion for an improvement period. What ensued was a lengthy proffer by petitioner, the DHHR, and the guardian as to petitioner's motion and disposition, and no testimony was taken. At the conclusion of the hearing, the court denied petitioner's motion for an improvement period and terminated her parental rights. The court noted that petitioner had essentially been on an improvement period since 2015 when considering the amount of time spent offering her services. The court further noted, "And whether it's been issues of homelessness or failure to protect, it boils down to her basic inability to parent." The court relied upon the opinion of the guardian and the evaluating psychologist in reaching its decision. The court further found that petitioner lacked the ability to parent or make decisions that would give her children a good life and that she had not been able to learn how to do so. Accordingly, pursuant to the guardian's recommendation, the court imposed disposition pursuant to West Virginia Code § 49-4-604(c)(5) with regard to A.G. and C.G. given their ages and desires.[3] The court terminated petitioner's parental rights to the remaining children, finding that petitioner "will not be able to remedy the issues that led to the filing of the petition in the near or distant future and it is necessary for the welfare of the children to terminate her parental rights." Petitioner objected and requested that the court permit her to voluntarily relinquish her parental rights to T.S.,

---

[3]As of the dispositional hearing, A.G. was nearly fifteen years old, and C.G. was fourteen years old. Both children expressed that they did not want petitioner's parental rights to be terminated.

D.G., and R.C., which the court denied. Petitioner appeals the court's September 30, 2021, dispositional order terminating her parental rights to T.S., D.G., and R.C. and imposing an alternative disposition with regard to A.G. and C.G.[4]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner alleges that the circuit court erred in finding that the DHHR made reasonable efforts to reunify the family when no services were offered. According to petitioner, the court "focused too much" on the fact that petitioner was the subject of prior abuse and neglect proceedings and a prior safety plan when no details of the underlying issues or the services provided are known. Petitioner contends that the DHHR "made absolutely no efforts, reasonable or otherwise, to preserve the familial relationship." Petitioner further argues that the court recognized that the proceedings were coming to a conclusion in an unusually fast manner and that, despite recognizing the same, terminated petitioner's parental rights without requiring the DHHR to make reasonable efforts and without hearing any evidence.

However, what petitioner fails to recognize is that the DHHR is not required to make reasonable efforts to preserve the family in all circumstances. According to West Virginia Code § 49-4-604(c)(7)(A),

> [f]or purposes of the court's consideration of the disposition custody of a child pursuant to this subsection, the department is not required to make reasonable efforts to preserve the family if the court determines: . . . The parent has subjected the child, another child of the parent or any other child residing in the same household or under the temporary or permanent custody of the parent to aggravated

---

[4]The fathers of A.G., C.G., T.S., and D.G. continue to participate in proceedings. Should reunification with the fathers not occur, the permanency plan for those children is adoption or legal guardianship. R.C.'s father's parental rights were terminated below, and the permanency plan for R.C. is adoption by her foster family.

circumstances which include, *but are not limited to*, abandonment, torture, chronic abuse, and sexual abuse.

(Emphasis added). While the circuit court below did not explicitly find that petitioner's case constituted one of aggravated circumstances, the evidence overwhelmingly supports such a finding. As set forth above, petitioner received services through an improvement period over the course of three years between 2015 and 2018 and received out-of-court services over the course of nine months in 2020. Despite the DHHR's extended efforts, the petition in this matter was filed based upon allegations that occurred only one month after the close of petitioner's 2020 services. This Court has previously addressed the non-exhaustive nature of West Virginia Code § 49-4-604(c)(7)(A) and whether circumstances similar to the case at bar constitute aggravated circumstances. We concluded that they do.

Specifically, in *In re C.C.*, the Court was asked to find error in the termination of a parent's parental rights when no services were offered during the proceedings. No. 19-0322, 2019 WL 6139581 (W. Va. Nov. 19, 2019)(memorandum decision). In denying the parent relief in that matter, we concluded as follows:

> Given such an abbreviated time between the dismissal of the first petition and filing of the second petition, viewed in combination with the extensive DHHR services provided during the first case such that no other or additional services were available or prospectively helpful to [p]etitioner, we cannot find that the circuit court erred in concluding that DHHR was not required to provide services under these particular circumstances.

*Id.*, at \*5. The circumstances in *In re C.C.* are nearly identical to those in the present matter. Petitioner received services for years, including during the nine months shortly before the filing of the instant petition, yet failed to make any meaningful improvements to her ability to parent the children as a result of these services. Additionally, the circuit court made a specific finding of aggravated circumstances regarding J.C.'s sexual abuse of A.G. Accordingly, given petitioner's extensive history of services, coupled with the aggravated circumstances finding regarding one of her children, we cannot find that petitioner is entitled to relief in this regard under the circumstances of this case.

Petitioner next argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period when she clearly demonstrated that she was willing and able to actively participate in services and requested the improvement period in writing. Petitioner states that she expressed her willingness to actively participate in the proceedings and "had begun the work towards her individual therapy to deal with the problems addressed in the psychological evaluation." Further, petitioner notes that she successfully completed an improvement period during a prior proceeding, which she contends indicates her ability to comply with services in the underlying proceedings.

As addressed above, the DHHR was not required to make reasonable efforts given the circumstances of petitioner's case. Therefore, the DHHR was justified in not affording petitioner services throughout the proceedings. However, this is not dispositive as to an improvement period.

West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." We have noted that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015). "Additionally, if a parent is unable to demonstrate an ability to correct the underlying conditions of abuse and/or neglect in the near future, termination of parental rights may proceed without the utilization of an improvement period." *In re Charity H.*, 215 W. Va. 208, 216, 599 S.E.2d 631, 639 (2004).

Here, petitioner fails to demonstrate that she was entitled to an improvement period. Aside from filing her written motion for an improvement period, petitioner presented no evidence in support of her motion. Petitioner failed to testify or present testimony at the hearing during which her counsel addressed her motion, and her counsel simply proffered as to why petitioner would comply with the terms and conditions of an improvement period. Given that petitioner takes issue with the DHHR's proffer in support of its motion to terminate petitioner's parental rights, we fail to understand how she believes her counsel's proffer was sufficient evidence to support her own motion. Based on the record before us, we find that petitioner failed to demonstrate that she was entitled to an improvement period. We note, however, that this decision in no way forecasts an outcome should petitioner file another motion for an improvement period upon remand of this matter to the circuit court.

Next, petitioner argues that the circuit court erred in terminating her parental rights without first holding an evidentiary hearing to allow the parties to call witnesses or move for the entry of any exhibits into evidence. Petitioner cites to Rule 35(b)(1) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, which sets forth that "[w]hen termination of parental rights is sought and resisted, *the court shall hold an evidentiary hearing* on the issues thus made, including the issues specified by statute and make such findings with respect thereto as the evidence shall justify." (Emphasis added). Petitioner notes that, while the DHHR indicated its intent to present testimony, the circuit court became distracted by her motion for an improvement period and terminated her parental rights to some of the children and imposed an alternative disposition with regard to the others without hearing any evidence. As such, petitioner avers that she was denied a meaningful opportunity to be heard and that the circuit court's findings are without basis. We agree.

Pursuant to West Virginia Code § 49-4-601(h), "[i]n any proceeding pursuant to this article, the party or parties having custodial or other parental rights or responsibilities to the child shall be afforded a meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses." Indeed, as this Court has held,

> "West Virginia Code, Chapter 49, Article [4], Section [601 (2015)], as amended, and the Due Process Clauses of the West Virginia and United States Constitutions prohibit a court or other arm of the State from terminating the parental rights of a natural parent having legal custody of his child, without notice and the opportunity for a meaningful hearing." Syl. Pt. 2, *In re Willis*, 157 W. Va. 225, 207 S.E.2d 129 (1973).

Syl. Pt. 3, *In re T.S.*, 241 W. Va. 559, 827 S.E.2d 29 (2019).[5] Here, it is clear that the circuit court violated petitioner's right to be heard.

This Court has previously held that "'[t]he standard of proof required to support a court order limiting or terminating parental rights to the custody of minor children is clear, cogent and convincing proof.' Syllabus Point 6, *In re: Willis*, 157 W.Va. 225, 207 S.E.2d 129 (1974)." Syl. Pt. 2, *In re Samantha M.*, 205 W. Va. 383, 518 S.E.2d 387 (1999). Here, the dispositional hearing consisted of the proffers of the DHHR and the guardian. Indeed, the record reveals that no sworn testimony was presented in support of the termination of petitioner's parental rights or any other alternative disposition. Given that no evidence was presented at the dispositional hearing, the circuit court was incapable of determining that the DHHR met its burden of clear and convincing proof. Therefore, the termination of petitioner's parental rights was erroneous.

As we have explained,

> [w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children adjudicated to be abused or neglected has been substantially disregarded or frustrated, the resulting order of disposition will be vacated and the case remanded for compliance with that process and entry of an appropriate dispositional order.

Syl. Pt. 5, *In re Edward B.*, 210 W. Va. 621, 624, 558 S.E.2d 620, 623 (2001). We find that the process established by our rules has been substantially disregarded or frustrated such that the dispositional order must be vacated, in part, and the matter remanded for a new dispositional hearing. Additionally, petitioner must be provided the opportunity to cross-examine any witnesses presented and to present any evidence she believes supports her position at disposition.

Because we are remanding the matter for a proper dispositional hearing, we need not address petitioner's assignments of error that the circuit court erred in (1) finding that petitioner demonstrated an inadequate capacity to solve the problems that led to the filing of the abuse and neglect petition and (2) denying petitioner's motion to continue the dispositional hearing.

For the foregoing reasons, the September 30, 2021, dispositional order terminating petitioner's parental rights to T.S., D.G., and R.C. and imposing an alternative disposition with regard to A.G. and C.G. is vacated, in part, and this case is remanded with direction to the circuit court to hold a new dispositional hearing in keeping with the direction above.[6] This Court is not

---

[5]While this holding specifically references a prior version of West Virginia Code § 49-4-601, the current version, enacted in May of 2019, retains language requiring that parents be provided a "meaningful opportunity to be heard, including the opportunity to testify."

[6]We note that the vacation of the September 30, 2021, dispositional order applies only to the circuit court's termination of petitioner's parental rights to T.S., D.G., and R.C. and imposition of an alternative disposition with regard to A.G. and C.G. Although the same order on appeal

suggesting any outcome in vacating and remanding this matter. Rather, the desired result is that another hearing be held so that evidence may be presented and that the case be fully developed and properly resolved. Taking into consideration the length of time that this case has been pending, the circuit court is ordered to hold the new dispositional hearing without delay.

The Clerk is directed to issue the mandate in this case forthwith.

Vacated, in part, and Remanded with Directions.

**ISSUED**: May 12, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn

---

contained rulings regarding the rights of some of the respondent fathers, they did not appeal the same, and the status of their parental rights is unaffected by this memorandum decision.

8